UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SETH CUTLER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KBR LUXURY, INC., <br><br> Defendant. | Civil Action No. 23-2377 <br><br> Judge Beryl A. Howell |

## MEMORANDUM OPINION

Plaintiffs Seth Cutler and Raffaele Viglianti contracted with defendant KBR Luxury, Inc., to perform construction and renovation work on a residential townhome plaintiffs own in Washington, D.C., for which work plaintiffs allegedly paid, in total over $96,000. Compl. ¶¶ 6–7, 15, ECF No. 1. Fifty-seven weeks after the project began, plaintiffs served defendant with a demand letter insisting on return of the more than $96,000 they had paid by that date, citing defendant's "deceitful and dishonest conduct" and an unenforceable contract, because defendant, though holding a D.C. general contractor license, was not properly licensed as a home improvement contractor or salesperson, as required by District of Columbia Municipal Regulation ("DCMR") § 16-800.1. *See* Compl., Ex. 1, Demand Letter at 1–2, ECF No. 1-1. Citing another Municipal Regulation, DCMR § 17-3900.7, which exempts licensed general contractors from compliance with most sections of the regulations applicable to licensed home improvement contractors—including DCMR § 16-800.1, which is relied upon by plaintiffs for their claims—defendant has now moved to dismiss the complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Def.'s Motion to Dismiss ("Def.'s Mot.") at 1, ECF No. 14. For the following reasons, defendant's motion is granted.

1

I.  **BACKGROUND**

The factual background, as alleged in the complaint, and procedural history of this case are briefly summarized below.

A.  **Factual Background**

Plaintiffs are residents of the District of Columbia and own a townhome on 13th St. NW, Washington, DC, 20011 ("the Property"). Compl. ¶¶ 1–2, 6. In January 2022, plaintiffs contracted with defendant, a Maryland corporation that operates out of Bethesda, Maryland, for construction and renovation work at the Property. *Id.* ¶¶ 3, 7.[1] The parties' contract provided for progress payments as follows: "30% of payment at contract signing ($33,930), 30% on the first day that labor, materials, equipment or services are provided ($33,930), 30% upon installation of cabinet or countertop ($33,930) and 10% at substantial completion ($11,290)," for a total of $113,080. *Id.* ¶¶ 7, 14 (internal quotation marks omitted). At the time of filing of plaintiffs' suit, they had paid defendant over $96,000, in accordance with the contract. *Id.* ¶ 15.

Plaintiffs do not dispute and affirmatively allege that defendant maintains a Basic Business License in the category of General Contractor-Construction Manager with the District of Columbia. *Id.* ¶ 8. They allege, however, that defendant neither has a current home improvement contractor license nor had their contract signed by a licensed home improvement salesperson. *Id.* ¶¶ 9–13. Consequently, in July 2023, plaintiffs served defendant with a demand letter seeking a return of all funds paid so far in relation to the Property. *Id.* ¶ 18. Plaintiffs' demand letter expressed frustration with the pace of work, stating that the renovation work "was to take six (6) weeks to complete, but yet fifty-seven (57) weeks later, much remains to be done." Demand Letter at 1. Further, the letter accused defendant of "deceitful and dishonest conduct,"

---

[1] The requirements for diversity jurisdiction under 28 U.S.C. § 1332 are met in this case, as the parties are completely diverse and the amount in controversy exceeds $75,000.

to include lying about work being completed and passing inspection, and forging plaintiffs' signature on an order. *Id.* at 1–2. In addition, the demand letter alleged that some of the contracted work was deficiently performed, which required work to be redone. *Id.* at 2. Finally, plaintiffs' demand letter alleged that defendant's receipt of payment before completion of the underlying work "violate[d] the home improvement regulations and render[ed] the contract void and unenforceable" because the "contract they entered into with KBR was not executed by a licensed salesperson on KBR's behalf." *Id.* Plaintiffs demanded that defendant, within a period of seven days, return the full amount of payment, or plaintiffs would "institute disgorgement proceedings against KBR for the return of all funds paid under the void and unlawful contract." *Id.* When defendant did not return funds in compliance with this demand, plaintiffs brought this action in August 2023.

      **B.**      **Procedural Background**

The complaint asserts two claims, for disgorgement of the funds allegedly unlawfully received by defendant due to defendant's violation of DCMR § 16-800.1 (Count One), and for violating the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3904(v), (d)(d), and 28-3905, by violating DCMR § 16-800.1 and misrepresenting "the authority of a salesman, representative or agent" (Count Two). Compl. ¶¶ 21–32 (quoting D.C. Code § 28-3904(v)). For the CPPA claim, plaintiffs seek treble damages under D.C. Code § 28-3905(k)(2). *Id.* ¶ 32.

Defendant failed to respond to plaintiffs' complaint within the procedurally required timeframe, at which point plaintiffs moved for default judgment and the Clerk of the Court entered default on October 19, 2023. *See* Pls.' Aff. for Default, ECF No. 7; Clerk's Entry of Default, ECF No. 8. Defendant's subsequent motion to set aside the default judgment was

granted over the plaintiffs' opposition.  *See* Minute Order (Dec. 14, 2023).  Now pending is defendant's motion to dismiss both claims, which is ripe for consideration.  *See* Pls.' Opp'n Def.'s Mot. to Dismiss ("Pls.' Opp'n"), ECF No. 17; Def.'s Reply to Pls.' Opp'n to Mot. to Dismiss ("Def.'s Reply"), ECF No. 18.

## II.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (citation omitted).  A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability" and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

In deciding a motion under Rule 12(b)(6), the plaintiff bears the burden of showing that the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 441 (D.C. Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678), and the court is required to construe all reasonable inferences in the plaintiff's favor, *Twombly*, 550 U.S. at 555; *see also Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022).  A court, however, does not "accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint."  *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alterations in original accepted and citation omitted); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of

4

a complaint, they must be supported by factual allegations."). In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alterations in original accepted and citation omitted).

## III.   DISCUSSION

Defendant seeks dismissal of the complaint for failing to state a claim on the grounds that plaintiffs' two claims rest "solely" on defendant's alleged violation of DCMR § 16-800.1, by accepting partial payments, as work on the Property progressed, but "in advance of the full completion of all work required to be performed under the contract," DCMR § 16-800.1, without holding a home improvement contractor license, Def.'s Mot. at 1. According to defendant, plaintiffs "fail to state a claim" because no violation of DCMR § 16-800.1 occurred as defendant has a D.C. general contractor license and, therefore, under DCMR § 17-3900.7, is "exempt from having to obtain a home improvement license as required under § 800.1," *id*.

Whether having a general contractor license exempts a company performing home improvement work from complying with DCMR § 16-800.1 is thus key to resolving the pending motion, a point plaintiffs concede. Pls.' Opp'n at 2. Defendant's exemption argument turns on the proper interpretation of, and interplay between, DCMR §§ 16-800.1 and 17-3900.7. As with any exercise in statutory construction, the analysis must begin with "the tools of statutory interpretation, including 'text, structure, purpose, and legislative history.'" *Loving v. I.R.S.*, 742 F.3d 1013, 1016 (D.C. Cir. 2014) (quoting *Pharm. Rsch. & Mfrs. of Am. v. Thompson*, 251 F.3d 219, 224 (D.C. Cir. 2001)); *see also King v. Burwell*, 576 U.S. 473, 498 (2015) ("Reliance on

5

context and structure in statutory business is a 'subtle business'" (quoting *Palmer v. Massachusetts*, 308 U.S. 79, 83 (1939))).

### A. Two Municipal Regulations At Issue

The most recent iterations of the two Municipal Regulations at issue—DCMR § 16-800.1 and § 17-3900.7—were adopted by the D.C. Department of Consumer and Regulatory Affairs ("DCRA") on the same day, April 24, 2009. *See* 56 D.C. Reg. 3098; 56 D.C. Reg. 3103. The relevant regulations are reviewed below.

#### 1.   *DCMR § 16-800.1*

DCMR § 16-800.1 appears in the title of Municipal Regulations governing "Consumers, Commercial Practices, and Civil Infractions," in the stand-alone chapter for "Home Improvements," that sets out requirements for licensing home improvement contractors or salespersons, including insurance requirements (§ 16-803), advertising restrictions (§ 16-807), and permit compliance (§ 16-812), and definitions for terms used in this chapter (§ 16-899). DCMR § 16-800.1 is included in Chapter 16-8's first section of "General Provisions," and provides, in full, that:

> No person shall require or accept any payment for a home improvement contract to be undertaken in the District in advance of the full completion of all work required to be performed under the contract, unless that person is licensed as a home improvement contractor or as a licensed salesperson employed by a licensed contractor in accordance with the provisions of this chapter.

DCMR § 16-800.1.

Chapter 16-8's definition section limits the types of businesses and work covered by this chapter on home improvements. To begin, "home improvement work" is defined to restrict such work to residential properties. DCMR § 16-899.1. Specifically, such work includes "the addition to or alteration, conversion, improvement, modernization, remodeling, repair, or

6

replacement of a residential property, or a structure adjacent to the residential property, including a driveway, fence, garage, porch, deck, or swimming pool." *Id*. This definition emphasizes this definitional limitation by stating, "[a]ny construction work outside the scope of 'home improvement work' shall be considered either general contracting or construction management, as those terms are defined in Title 17 of the District of Columbia Municipal Regulations, Chapter 39." *Id*. Four types of work are also explicitly exempted from "home improvement work": (1) "construction of a new building to be used as a residential property," (2) "sale or installation of any appliance, materials, household furnishings, or equipment, if not made a part of the realty," (3) "work performed by licensed electricians, plumbers and gasfitters, or refrigeration and air conditioning mechanics, so long as the work performed by them is limited to that of their licensed occupation," and (4) "work performed by a homeowner on his or her own residential property." *Id.*

The other definitions in DCMR § 16-899.1 are largely tied to the definition of "home improvement work." For example, a home improvement contract is defined as "an agreement for the performance of home improvement work in the District for a contract price of three hundred dollars ($ 300) or more." *Id.* A home improvement contractor is "any person who enters, or offers to enter, into a home improvement contract with a homeowner." *Id.*

To obtain a home improvement contractor license requires submission of certain information to the Director of the DCRA to assess the applicant's "trustworth[iness] and inten[t] to act as a bona fide home improvement contractor or salesperson," *id.* § 16-801.2, plus satisfaction of requirements for a bond or other security in the amount of $25,000, *id.* § 16-802.1–11, and liability insurance (setting minimum amounts at $50,000 or $100,000 and for self-insurance), *id*. § 16-803.1–4.

Finally, penalties for violation of the provisions in Chapter 16-8 include fines "not exceeding $ 300" or "not more than ninety (90) days" imprisonment, or both, DCMR § 16-800.7, as well alternative sanctions of "civil fines, penalties, and fees," *id.* § 16-800.6.

### 2. DCMR § 17-3900.7

DCMR § 17-3900.7, the exemption relied upon by defendant in this case, is placed in the title of Municipal Regulations governing "Business, Occupations, and Professionals," which is separate from the title containing the chapter for "Home Improvements." Title 17, Chapter 39 governs "General Contractor/Construction Manager" and requires persons engaged in general contracting or construction management in the District to apply to the DCRA "for a basic business license with a General Contractor/Construction Manager endorsement (license)," DCMR § 17-3900.1, and to obtain such a license before engaging in business "as a General Contractor/Construction Manager," *id*. § 17-3900.4. DCMR § 17-3900.7 is included in Chapter 17-39's first section of "General Provisions," and provides, in full, that:

> A person who obtains a license under this chapter shall not be required to obtain a home improvement contractor license to engage in home improvement work, as that term is defined in 16 DCMR § 899.1; Provided, that the person engaging in such work complies with the requirements of 16 DCMR §§ 808, 810, and 811."

DCMR § 17-3900.7.

Notably, this provision expressly excludes from the exemption certain sections of Title 16, namely, "16 DCMR §§ 808, 810, and 811," which, in turn, set out the requirements for certain terms and disclosures in home improvement contracts, home improvement payment receipts, and approval of contract and receipt forms by the Director of the DCRA, respectively. This exemption thus ensures that licensed general contractors performing home improvement

8

work in the District use contracts and receipt forms with the terms and disclosures approved by the DCRA Director.

Following the "General Provisions" section, Chapter 39 sets out requirements for General Contractors and Construction Managers, including licensing application requirements (§ 17-3901), insurance requirements (§ 17-3902), advertising and records (§ 17-3904), contract and receipt requirements (§§ 17-3905, -3906), permit compliance (§17-3907), enforcement provisions for denial, suspension or revocation of a general contractor license (§§ 17-3908–3911), and pertinent definitions (§17-3999).

Chapter 39 defines a "general contractor" as "any person who, for a fee, is contracted to do construction on real property owned, controlled, or leased by another person of commercial, industrial, institutional, governmental, *residential* or *accessory use buildings or structures*." DCMR § 17-3999.1 (emphasis supplied).  Not only does this general contractor definition cover work on "residential" property, this definition goes on expressly to "include[] the remodeling, repair, improvement or demolition of these buildings or structures," *id*., and thereby overlaps in part with definitions in DCMR § 16-899.1 (covering, in definition of "residential property," "any structure or grounds appurtenant to the single-family or two-family dwelling," and covering, in definition of "home improvement work," "improvement, modernization, remodeling, repair, or replacement of a residential property, or a structure adjacent to the residential property"). *Id.*[2]

---

[2] Though not relevant here, the definition of "general contractor" "also include[s] persons engaged in heavy construction (including highway, street, bridge, transmission line, marine facilities, and oil and gas structures construction, and dredging); land development (including blasting, test drilling, landfill, leveling, earthmoving, excavating, land drainage, and other land preparation); and the construction of new buildings." DCMR § 17-3999.1. Chapter 17-39's definition section excludes from the "general contractor" definition several types of other licensed person and types of work, none of which are applicable here, excluding, for example, a subcontractor, employee, or agent working for or under the supervision of a licensed general contractor, suppliers of materials for use at a construction site for "the work of a general contractor," licensed engineers, architects, electricians, plumbers, gasfitters, and refrigeration and air conditioning mechanics working within the scope of their licenses; and persons doing general contracting work on their own primary residence. DCMR § 17-3999.1.

General contractor licenses are more onerous to obtain under DCMR § 17.3901 than home improvement contractor licenses under DCMR § 16-801 in several respects.  First, an application for a general contractor's license, for example, must "list all jurisdictions where the applicant is licensed to engage in the business of general contracting or construction management and if any disciplinary actions have been taken against the applicant in any other jurisdiction" and "include a credit report from a credit reporting agency that is subject to oversight by the Federal Trade Commission and a statement of all outstanding judgments against the applicant," while no analogous requirements exist in the application for a home improvement contractor license.  DCMR § 17-3901.4.  Second, general contractor licenses fall into five separate categories authorizing engagement in projects at different contract values, ranging from $500,000 to over $10,000,000, DCMR § 17-3901.2, while no such differentiation is provided for home improvement contractor licenses.  Further, the general contractor license categories require different levels of insurance and bond coverage, ranging, at the low end, from $500,000 in coverage to, for the highest class of license, $2,500,000 in coverage.  *Id.* § 17-3902.1.  By comparison, a home improvement contractor license is required for any project valued at over $300, with no classes of licenses for more valuable or complex projects.  DCMR § 16-801.  A home improvement contractor license also requires that the licensee carry insurance for only "one hundred thousand dollars ($ 100,000) in the aggregate for more than one (1) person in any single accident, and ten thousand dollars ($ 10,000) property damage in any single accident."  *Id.* § 16-803.

Finally, similarly to Chapter 8 of Title 16, penalties for violation of provisions in Chapter 39 of Title 17 include suspension or revocation of the license, *see* DCMR §§ 17-3902.3, 3908.3, 3908.4, fines "not exceeding $300" or "not more than ninety (90) days" imprisonment, or both,

10

DCMR § 17-3909.2, as well alternative sanctions of "civil fines, penalties, and fees," *id.* § 17-3909.3.

**B.     Analysis**

As noted, the parties agree that defendant is licensed as a general contractor in the District and, thus, the exemption provided by DCMR § 17-3900.1 relieving defendant from having "to obtain a home improvement contractor license to engage in home improvement work," DCMR § 17-3900.7, applies to defendant's home improvement work.  *See* Compl. ¶ 8.  The parties disagree, however, on whether the general provision in DCMR § 16-800.1 nonetheless applies to defendant and bars collection of progress payments for home improvement work in advance of all work being completed on the project, absent a home improvement contractor license "in accordance with the provisions of this chapter [8. Home Improvements]."  DCMR § 16-800.1.

While more clarity in these Municipal Regulations could devoutly be wished—particularly given that the penalties for violation include not only livelihood threats with license revocation and, even more seriously, criminal penalties authorizing incarceration, *see* DCMR §§ 16-813, 17-3909—defendant's position is more persuasive.  As explained in more detail below, the exemption provided for licensed general contractors in DCMR § 17-3900.1 provides an exemption from each and every requirement in Title 16's Chapter 8, except for DCMR §§ 16-808, 810, and 811, which DCMR § 17-3900.1 expressly excludes.

Caselaw consideration is limited regarding the scope of the exemption in DCMR § 17-3900.7 in relation to the general provision set out in DCMR § 16-800.1 for home improvement

work in the District.³  The law is well-settled that an <u>un</u>licensed business performing home improvement work and receiving progress payments violates DCMR§ 16-800.1, making that business subject to disgorgement, *C.A. Harrison Companies LLC v. Evans*, 266 A.3d 979, 983 (D.C. 2022), and to repayment of any partial payments received from the homeowner, *see, e.g.*, *Bathroom Design Inst. v. Parker*, 317 A.2d 526, 528 (D.C. 1974); *Marzullo v. Molineaux*, 651 A.2d 808, 810 n.3 (D.C. 1994); *see also Djourabchi v. Self*, 571 F. Supp. 2d 41, 43, 46–47 (D.D.C. 2008) ("There is no exception within the statute for unlicensed contractors who are under the supervision of architects or engineers, and defendant cannot mitigate the licensing requirement of the statute by claiming mistake.").  This case differs significantly from those cases, however, because here defendant is licensed as a general contractor in the District.  As another Judge on this Court has observed in reviewing these regulations, "municipal policy [] permits general contractors . . . to perform home improvement work without obtaining a specific home improvement license." *Kelleher v. Dream Catcher, LLC*, 221 F. Supp. 3d 157, 160 (D.D.C. 2016) (quoting District's DCRA policy guidance stating that "[i]f a General Contractor performs work on existing residential properties, a Basic Business License for the Home Improvement Contractor category is not required in addition to the Basic Business License for the General Contractor category."  DCRA, Get a General Contractor/Construction Manager License, Special Instructions, http://dcra.dc.gov/service/get-general-contractorconstruction-manager-license (last visited Dec. 22, 2016)).

---

³ Plaintiffs point to no supportive caselaw for their interpretation of the interplay between DCMR §§ 16-800.1 and 17-3900.7, and defendant discusses, in its motion to set aside default judgment rather than its pending motion, a single decision, in which the D.C. Superior Court briefly considered this issue, holding that because "[p]laintiff has not provided—and the court is not aware of— any authority for the proposition that the acceptance of an advance payment by a licensed general contractor voids a contract," plaintiff in a similar home improvement contract dispute was not entitled to partial summary judgment on the pleadings.  *See Sereno Oscar Grassi v. AGC General Contractors, et al.*, 2020 CA 002553 B (D.C. Super. Ct. Nov. 5, 2020).  This decision accords with the conclusion reached in this memorandum opinion.

The question raised in this case is more specific than that in *Kelleher*, as to the precise scope of the DCMR § 17-3900.7 exemption and whether that scope exempts licensed general contractors in the District from compliance with the progress payment bar in DCMR § 16-800.1, without a home improvement contractor license. Close analysis of the regulatory licensing schemes pertaining to general and home improvement contractors, including their structure, text, policies, and purposes, confirm that licensed general contractors are exempt from compliance with DCMR § 16-800.1.

### 1. *Regulatory Structure For Licensing Schemes*

The DCMR chapters on home improvement and general contractors, Chapters 16-8 and 17-39, respectively, are in separate titles and yet cross-reference each other, reflecting where the regulatory schemes defining the requirements for each license are intended to differ or to apply to licensees under both schemes. As described *supra*, in Part III.A, these two chapters outline separate requirements for obtaining a home improvement contractor license and a general contractor license, in addition to separate insurance limits and other requirements to carry out work associated under each type of license. *See* DCMR §§ 16-8, 17-39. Current iterations of both chapters were adopted on the same day by the District's DCRA, a strong indication that these two separate licensing schemes and the separate requirements for each were meant to work in tandem, as confirmed by express cross references in Chapter 17-39 to Chapter 16-8, and *vice versa*. *See, e.g.,* DCMR § 17-3900.7 (cross-referencing DCMR §§ 16-808, 810, 811); DCMR § 16-899 (cross-referencing, in definition of "Home improvement work," "general contracting or construction management, as those terms are defined in Title 17 of the District of Columbia Municipal Regulations, Chapter 39.").

### 2. *Textual Review*

Recall that the exemption in § 17-3900.7 provides that "[a] person who obtains a license under this chapter shall not be required to obtain a home improvement contractor license to engage in home improvement work . . . [p]rovided, that the person engaging in such work complies with the requirements of 16 DCMR §§ 808, 810, and 811." As defendant correctly posits, DCMR § 17-3900.7 "expressly exempts a licensed general contractor from all provisions of the D.C. Home Improvement regulations (§§ 16-800 to 16.899) except for §§ 808, 810, and 811." Def.'s Reply at 4. Against the backdrop of the most recent version of each chapter being adopted on the same day by the same regulatory body and the cross-references between chapters being best understood as an indication that regulators were aware of the contents of each chapter, the specific text in DCMR § 17-3900.7 further confirms that the DCRA knew how to require compliance with certain provisions when such compliance was intended. By expressly requiring compliance with three enumerated sections in Chapter 16-8 to regulate home improvement contracts, receipts, and forms for contracts and receipts, the text can plainly be understood to exempt general contractors from the other requirements of the Home Improvement Chapter 16-8.

This textual interpretation is consistent with the well-settled interpretive canon *expressio unius est exclusion alterius*, which instructs that the express inclusion of one item in a group implies purposeful exclusion of the other items. *See Bittner v. United States*, 598 U.S. 85, 94 (2023); *N.L.R.B. v. SW General, Inc.*, 580 U.S. 288, 290 (2017) ("expressing one item of [an] associated group or series excludes another left unmentioned."). This canon applies here to exempt defendant, as a licensed general contractor, from complying with the remainder of DCMR §§ 16-800–815.

This reading of the scope of the exemption in DCMR § 17-3900.7 is further corroborated by the definition of "general contractor" in DCMR § 17-3999, which plainly contemplates a licensed general contractor doing home improvement work.  The general definition includes "any person who, for a fee, is contracted to do construction on real property owned, controlled, or leased by another person of … residential or accessory use buildings or structures" and "also includes the remodeling, repair, improvement or demolition of these buildings or structures."  DCMR § 17-3999.1.  While the definition of general contractor excludes individuals such as subcontractors, suppliers and other types of licensed professional, *see supra* n.2, this definition does not exclude work that would be considered home improvement work.  Although the requirements to obtain and maintain a license as a general contractor under Chapter 17-39 of the DCMR are considerably more arduous than the requirements set out to obtain a home improvement license in Chapter 16-8, nothing in these chapters indicates that a general contractor could not perform such home improvement work.  The opposite is, in fact, true.  The more onerous requirements to obtain a general contractor's license provide assurance that these licensees are more than capable of meeting the qualifications for a home improvement contractor license and to perform the work of the latter type of licensee.

For example, obtaining a home improvement license requires submission of a form prescribed by the Director of DCRA.  DCMR § 16-801.1.  The information and requirements included on such form are not outlined in the regulations, but instead are up to the Director's discretion.  *Id.*  By contrast, an application for a general contractor license has multiple enumerated requirements in DCMR § 17-3901, including that the application shall list the jurisdictions in which the applicant is licensed and any disciplinary actions taken against the applicant in those jurisdictions, and the applicant shall provide a credit report to the Department

15

along with the application. DCMR § 17-3901. A general contractor's license may only be valid for two years at a time, whereas a home improvement license has no enumerated time limit. *Id.* In addition, a general contractor licensee must comply with significantly more onerous insurance requirements to maintain the license, with coverage requirements ranging up to $2,500,000, as opposed to the $100,000 maximum required for home improvement work. DCMR §§ 17-902, 16-803.

### 3. *Policies Served By Licensing Schemes*

As outlined *supra* in Part III.A, the regulatory licensing schemes for licensed general contractors and licensed home improvement contractors have generally parallel but differing requirements. In other words, many of the regulations in Chapter 16-8 of the DCMR covering requirements for home improvement contractors—such as permit and insurance requirements—have analogous regulations in Chapter 17-39 applying to licensed general contractors. *See* 17 DCMR §§ 3900-3999. Requiring licensed general contractors to comply with the home improvement regulations not expressly enumerated in § 17-3900.7, when these contractors must already comply with the regulations that apply specifically to their business, would be superfluous, particularly since the licensed general contractor requirements are generally more onerous than those that apply to licensed home improvement contractors.

In contrast, as a policy matter, plaintiffs' reading would force all general contractors to go through a dual licensing process of obtaining a home improvement license to accept any progress payments for home improvement work done in the District. This could discourage licensed general contractors from bidding for or accepting home improvement work with the obvious potential downside to competition from licensed general contractors for such work and concomitant reduction in choice of contractors for residential property owners in the District.

Construing the scope of DCMR § 17-3900.7 to limit the home improvement licensing requirements applicable to licensed general contractors to those expressly enumerated, *i.e.*, "16 DCMR §§ 808, 810, and 811," DCMR § 17-3900.7, would avoid such a result and enable licensed general contractors to compete for such home improvement work and to contract for progress payments, without having to obtain a dual license.

### 4.   *Regulatory Purposes*

The interpretation of DCMR § 17-3900.7 advanced by defendant and adopted here is also a more appropriate understanding of the purpose of DCMR § 16-800.1 "because no license is required *merely* to engage in home improvement work if a person is not going to accept advance payment." Def.'s Reply at 2 (emphasis in original). DCMR § 16-800.1 does not prevent an unlicensed person from engaging in home improvement work "if that person is willing to wait until the entire project is complete to accept payment." *Id.* Thus, in order for DCMR § 17-3900.7 to confer some benefit upon licensed general contractors, it must necessarily allow them to accept payment for home improvement work prior to completion of the project, as would be allowed by a licensed home improvement contractor.

This reading is supported by the D.C. Court of Appeals' decision in *Shalom v. Smith*, 304 A.3d 983 (D.C. 2023), where the court explained that "an action for disgorgement under Section 800.1 cannot lie against a party who has not personally accepted payment," and that "a cause of action under Section 800.1 does not accrue until the contractor has actually accepted a payment." *Id.* at 986. Indeed, "[t]he regulations do not apply where the contractor finances himself during the progress of the work. The absence of a license is relevant only where the contractor requires or accepts payment in advance of full completion of the contracted work." *Hoffheins v. Heslop*, 210 A.2d 841, 843 (D.C. 1965). *Shalom* confirms that DCMR § 16-800.1 serves only to prohibit

17

the acceptance of progress payments for unlicensed home improvement work and not the actual performance of such work, and thus substantiates defendant's claim that DCMR § 16-800.1 must confer some other benefit upon licensed general contractors.  This reading would give meaning to the exemption set out in DCMR § 17-3900.7, which otherwise would convey little purpose or benefit for licensed general contractors.

"[T]he D.C. Court of Appeals has held that D.C. Municipal Regulation § 16-800.1 nullifies home improvement contracts made in violation of the regulation" and "[s]uch contracts are unenforceable on a contract or even quasi contract basis."  *In re El Rafaei*, No. 20-12583 (KHK), 2022 WL 2916876, at *12 (E.D. Va. July 22, 2022) (citing *C.A. Harrison Companies LLC*, 266 A.3d at 983).  This draconian remedy formulated in DCMR § 16-800.1 was purposefully fashioned as a strict rule to deter unlicensed individuals from performing home improvement work in the District.  *See Authentic Home Improvements v. Mayo*, No. 90-05, 2006 WL 2687533, at *3 (D.C. Super. Ct. June 2, 2006) ("If this ironclad rule is not respected, the consequences have been held to be equally draconian").  Indeed, DCMR § 16-800.1 is a strict liability regulation and does not take into account the intent of the parties or the quality of the work performed, and does not allow for compensation under a theory of *quantum meruit*.  *See Djourabchi*, 571 F. Supp. at 47 (collecting cases).

The D.C. Court of Appeals has justified such a draconian result on two grounds.  *C.A. Harrison Companies, LLC*, 266 A.3d at 983.  "First, the regulation is not a blanket prohibition against contractors accepting progress payments, but requires only that a contractor be licensed before accepting such payments—'a simple administrative matter' for the qualified contractor.'"  *Id.* (quoting *Cevern, Inc. v. Ferbish*, 666 A.2d 17, 20 (D.C. 1995)).  Such "[l]icensure provides 'simple and sufficient proof' of the contractor's qualifications to perform the work of a general

18

contractor." *Id.* (quoting *Cevern*, 666 A.2d at 20).  Notably, even though *C.A. Harrison Companies, LLC* involved only a home improvement contract, the court referenced the qualifications of a general contractor in reasoning that the defendant owed repayment of funds, suggesting that licensure as a general contractor is sufficient to confer all the benefits of a home improvement license, as defendant argues in this case.  *See id.*  Second, the regulation serves "to protect consumers against unscrupulous dealings by home improvement contractors."  *Truitt v. Miller*, 407 A.2d 1073, 1077–78 (D.C. 1979).  Each of these grounds is aimed at avoiding the risks associated with unlicensed businesses performing home improvement work, which is not an issue when the work is performed by a licensed general contractor.  Thus, this draconian remedy is unnecessary in scenarios such as this case where defendant was a licensed general contractor performing home improvement work.  This lends further support to the conclusion that DCMR § 17-3900.7 indeed exempts defendant and other general contractors from complying with DCMR § 16-800.1, and confirms that defendant's motion to dismiss should be granted.

## IV.   CONCLUSION

Defendant is correct that DCMR § 17-3900.7 exempts licensed general contractors from complying with DCMR § 16-800.1. Given the parties' agreement that defendant has a valid general contractor license, defendant did not violate DCMR § 16-800.1, which alleged violation undergirds plaintiffs' claims.  Accordingly, defendant's Motion to Dismiss, ECF No. 14, is granted, and plaintiffs' complaint against defendant is dismissed.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

DATE: June 10, 2024.

_____
**BERYL A. HOWELL**
United States District Judge